## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| SPENNETTA FAMILY CARE CHIROPRACTIC, S.C., on behalf of plaintiff and the class defined below, | ) ) ) ) ) | |
| Plaintiff, | ) ) | 17 CV 228 |
| vs. | ) ) | |
| JT GROUP, INC., JAMES TURNER, and JOHN DOES 1-10, | ) ) ) | |
| Defendants. | ) | |

## COMPLAINT – CLASS ACTION

## MATTERS COMMON TO MULTIPLE COUNTS

## INTRODUCTION

1.      Plaintiff, Spennetta Family Care Chiropractic, S.C., brings this action to secure redress for the actions of defendants, JT Group, Inc. and James Turner, in sending or causing the sending of unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), Wisc. Stats. §100.20, and the common law.

2.      The TCPA expressly prohibits unsolicited fax advertising.  Unsolicited fax advertising damages the recipients.  The recipient is deprived of its paper and ink or toner and the use of its fax machine.  The recipient also wastes valuable time it would have spent on something else.  Unsolicited faxes prevent fax machines from receiving and sending authorized faxes, cause wear and tear on fax machines, and require labor to attempt to identify the source and purpose of the unsolicited faxes.

1

## PARTIES

3.      Plaintiff, Spennetta Family Care Chiropractic, S.C., is a Wisconsin service corporation with offices in Madison, Wisconsin, where it maintains telephone facsimile equipment.

4.      Defendant, JT Group, Inc., is a Georgia corporation.   Its registered agent and office is James Turner, 135 McDonough Parkway, McDonough, Georgia 30253.

5.      James Turner is the sole officer of JT Group, Inc.  He was also the CEO of a now defunct corporation,  C.J. Turner Co., Inc.  Both JT Group, Inc. and CJ Turner Co., Inc. were engaged in the business of making loans.

6.      Defendants, John Does 1-10, are other natural or artificial persons that were involved in the sending of the facsimile advertisements described below.  Plaintiff does not know who they are.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction under 28 U.S.C. §§1331 and 1367.   *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 751-53 (2012);  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446  (7th Cir. 2005).

8.      Venue and personal jurisdiction exist because defendant committed tortious acts by causing the transmission of unlawful communications into the state and defendant has transacted business here.

## FACTS

9.      On June 20, 2015, plaintiff, Spennetta Family Care Chiropractic, S.C., received the unsolicited fax advertisement attached as Exhibit A on its facsimile machine.

2

10.      On September 13, 2015, plaintiff, Spennetta Family Care Chiropractic, S.C., received the unsolicited fax advertisement attached as Exhibit B on its facsimile machine.

11.      On November 12, 2015, plaintiff, Spennetta Family Care Chiropractic, S.C., received the unsolicited fax advertisement attached as Exhibit C on its facsimile machine.

12.      During 2015, plaintiff, Spennetta Family Care Chiropractic, S.C., received the unsolicited fax advertisement attached as Exhibit D on its facsimile machine.

13.      On July 1, 2016, plaintiff, Spennetta Family Care Chiropractic, S.C., received the unsolicited fax advertisement attached as Exhibit E on its facsimile machine.

14.      On October 17, 2016, plaintiff, Spennetta Family Care Chiropractic, S.C., received the unsolicited fax advertisement attached as Exhibit F on its facsimile machine.

15.      Exhibits A-B were sent by the defunct corporation, CJ Turner, Co., Inc., at the direction of its chief executive officer, James Turner.  They direct inquiries and responses to James Turner.

16.      Exhibits C-F were sent by JT Group, Inc., at the direction of its sole officer James Turner.   They direct inquiries and responses to James Turner.

17.      Discovery may reveal the transmission of additional faxes as well.

18.      Defendants are responsible for sending or causing the sending of the faxes.

19.      Defendants, as the persons whose products or services were advertised in the faxes, derived economic benefit from the sending of the faxes.

20.      Defendants either negligently or willfully violated the rights of plaintiff and other recipients in sending the faxes.

21.      Plaintiff had no prior relationship with defendants and had not authorized the

sending of fax advertisements to plaintiff.

22.    The faxes do not contain an "opt out" notice that complies with 47 U.S.C. §227.

23.    The TCPA provides for affirmative defenses of consent or an established business relationship.  Both defenses are conditioned on the provision of an opt out notice that complies with the TCPA.  *Holtzman v. Turza*, 728 F.3d 682 (7th Cir. 2013); *Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013).

24.    On information and belief, the faxes attached hereto were sent as part of a mass broadcasting of faxes.

25.    On information and belief, defendants have transmitted similar fax advertisements to at least 40 other persons in Wisconsin.

26.    There is no reasonable means for plaintiff or other recipients of defendants' advertising faxes to avoid receiving illegal faxes.  Fax machines must be left on and ready to receive the urgent communications authorized by their owners.

## COUNT I – TCPA

27.    Plaintiff incorporates ¶¶ 1-26.

28.    The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine ..." 47 U.S.C. §227(b)(1)(C).

29.    The TCPA,  47 U.S.C. §227(b)(3), provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**

**(A)  an action based on a violation of this subsection or the regulations**

4

**prescribed under this subsection to enjoin such violation,**

**(B)  an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**

**(C)  both such actions.**

**If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

30.    Plaintiff and each class member suffered damages as a result of receipt of the faxes, in the form of paper and ink or toner consumed as a result.  Furthermore, plaintiff's statutory right of privacy was invaded.

31.    Plaintiff and each class member is entitled to statutory damages.

32.    Defendants violated the TCPA even if their actions were only negligent.

33.    Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

34.    Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons with fax numbers (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of defendants JT Group, Inc., or C.J. Turner Co., Inc., promoting their goods or services for sale (d) and which did not contain an opt out notice as described in 47 U.S.C. §227.  By "compliant opt out notice" is meant one (i) on the first page of the fax (ii) that states that the recipient may make a request to the sender not to send any future unsolicited advertisements to a telephone facsimile machine (iii) that states that failure to comply, within the shortest reasonable time, as determined

5

by the Federal Communications Commission, is unlawful; (iv) that provides instructions on how to submit an opt out request and (v) that includes a domestic contact telephone and facsimile machine number and a cost-free mechanism for the recipient to transmit such a request to the sender that permit a request to be made at any time on any day of the week.

35.    The class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 40 members of the class.

36.    There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

      a.    Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

      b.    The manner in which defendants compiled or obtained their list of fax numbers;

      c.    Whether defendants thereby violated the TCPA;

      d.    Whether defendants thereby engaged in unfair acts and practices; and

      e.    Whether defendants thereby converted the property of plaintiff.

37.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

38.    Plaintiff's claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

39.     A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

40.     Numerous courts have certified class actions under the TCPA. *Holtzman v. Turza*, 08 C 2014, 2009 WL 3334909, 2009 U.S. Dist. LEXIS 95620 (N.D.Ill., Oct. 14, 2009), aff'd in relevant part, 728 F.3d 682 (7th Cir. 2013); *Sadowski v. Med1 Online, LLC,* 07 C 2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *CE Design Ltd. v Cy's Crabhouse North, Inc.*,  259 F.R.D. 135 (N.D.Ill. 2009); *Targin Sign Sys. v Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894 (N.D.Ill. 2010); *Garrett v. Ragle Dental Lab, Inc.,* 10 C 1315, 2010 U.S. Dist. LEXIS 108339, 2010 WL 4074379 (N.D.Ill., Oct. 12, 2010); *Hinman v. M & M Rental Ctr.,* 545 F.Supp. 2d 802 (N.D.Ill. 2008); *Clearbrook v. Rooflifters, LLC*, 08 C 3276,  2010 U.S. Dist. LEXIS 72902 (N.D. Ill. July 20, 2010) (Cox, M.J.); *G.M. Sign, Inc. v. Group C Communs., Inc*., 08 C 4521, 2010 WL 744262, 2010 U.S. Dist. LEXIS 17843 (N.D. Ill. Feb. 25, 2010); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D.Wash. 2007); *Display South, Inc. v. Express Computer Supply, Inc.,* 961 So.2d 451, 455 (La. App. 1st Cir. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.*, 992 So. 2d 510 (La. App. 1st Cir. 2008); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Ok. App. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. (App.) 94, 50 P.3d 844 (2002);  *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind.App. 2003); *Critchfield Physical Therapy v. Taranto Group, Inc.*, 293 Kan. 285; 263 P.3d 767 (2011); *Karen S. Little, L.L.C. v. Drury Inns. Inc.,* 306 S.W.3d 577 (Mo. App. 2010).

41.   Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

a.   Actual damages;

b.   Statutory damages;

c.   An injunction against the further transmission of unsolicited fax advertisements;

d.   Costs of suit;

e.   Such other or further relief as the Court deems just and proper.

## COUNT II – WISC. STATS. §100.20

42.   Plaintiff incorporates ¶¶ 1-26.

43.   Defendants engaged in unfair acts and practices, in violation of Wisconsin Stats. §100.20, by sending fax advertisements to plaintiff and others.

44.   Defendants engaged in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to recipients of their advertising.

45.   Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

46.   Defendants engaged in such conduct in the course of trade and commerce.

47.   Defendants' conduct caused recipients of their advertising to bear the cost thereof. This gave defendants an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail.  For example, an advertising campaign targeting one million recipients

would cost $500,000 if sent by U.S. mail but only $20,000 if done by fax broadcasting.  The

reason is that instead of spending $480,000 on printing and mailing his ad, the fax broadcaster

misappropriates the recipients' paper and ink.  "Receiving a junk fax is like  getting junk mail

with the postage due".   Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday,

July 18, 1989, 101st Cong. 1st Sess.

48.    Defendants' shifting of advertising costs to plaintiff and the class members in this

manner makes such practice unfair.  In addition, defendants' conduct was contrary to public

policy, as established by the TCPA and Wisconsin statutory and common law.

49.    Defendants should be enjoined from committing similar violations in the future.

**CLASS ALLEGATIONS**

50.    Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of

a class, consisting of (a) all persons with Wisconsin fax numbers (b) who, on or after a date six

years prior to the filing of this action, (c) were sent faxes by or on behalf of defendant JT Group,

Inc., or C.J. Turner Co., Inc., promoting their goods or services for sale (d) and which did not

contain an opt out notice as described in 47 U.S.C. §227.  By "compliant opt out notice" is meant

one (i) on the first page of the fax (ii) that states that the recipient may make a request to the

sender not to send any future unsolicited advertisements to a telephone facsimile machine (iii)

that states that failure to comply, within the shortest reasonable time, as determined by the

Federal Communications Commission, is unlawful; (iv) that provides instructions on how to

submit an opt out request and (v) that  includes  a domestic contact telephone and facsimile

machine number and a cost-free mechanism for the recipient to transmit such a request to the

sender that permit a request to be made at any time on any day of the week.

9

51.    The class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 40 members of the class.

52.    There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

      a.    Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

      b.    Whether defendants thereby violated the TCPA;

      c.    Whether defendants thereby violated Wisc.Stats. §134.72;

      d.    Whether defendants thereby engaged in unfair acts and practices;  and

      e.    Whether defendants thereby converted the property of plaintiff.

53.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

54.    Plaintiff's claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

55.    A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

56.    Management of this class action is likely to present significantly fewer difficulties

that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

a.    Appropriate damages;

b.    An injunction against the further transmission of unsolicited fax advertising;

c.    Attorney's fees, litigation expenses and costs of suit;

d.    Such other or further relief as the Court deems just and proper.

## COUNT III – CONVERSION

57.    Plaintiff incorporates ¶¶ 1-26.

58.    By sending plaintiff and the class members unsolicited faxes, defendants converted to their own use ink or toner and paper belonging to plaintiff and the class members.

59.    Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

60.    By sending the unsolicited faxes, defendants appropriated to their  own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable.  Such appropriation was wrongful and without authorization.

61.    Defendants knew or should have known that such  appropriation of the paper and ink or toner was wrongful and without authorization.

62.    Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose.   Plaintiff and each class member thereby

11

suffered damages as a result of receipt of the unsolicited faxes.

63.     Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

64.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Wisconsin fax numbers (b) who, on or after a date six years prior to the filing of this action, (c) were sent faxes by or on behalf of defendants JT Group, Inc., or C.J. Turner Co., Inc., promoting their goods or services for sale (d) and which did not contain an opt out notice as described in 47 U.S.C. §227.  By "compliant opt out notice" is meant one (i) on the first page of the fax (ii) that states that the recipient may make a request to the sender not to send any future unsolicited advertisements to a telephone facsimile machine (iii) that states that failure to comply, within the shortest reasonable time, as determined by the Federal Communications Commission, is unlawful; (iv) that provides instructions on how to submit an opt out request and (v) that  includes  a domestic contact telephone and facsimile machine number and a cost-free mechanism for the recipient to transmit such a request to the sender that permit a request to be made at any time on any day of the week.

65.     The class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 40 members of the class.

66.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

    a.     Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

b.      Whether defendants thereby violated the TCPA;

c.      Whether defendants thereby engaged in unfair acts and practices;

d.      Whether defendants thereby violated Wisc.Stats. §134.72; and

e.      Whether defendants thereby converted the property of plaintiff.

67.      Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

68.      Plaintiff's claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

69.      A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

70.      Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter  judgment in favor of plaintiff and the class and against defendants for:

a.      Appropriate  damages;

b.      An injunction against the further transmission of unsolicited fax advertisements;

c.      Costs of suit;

d.       Such other or further relief as the Court deems just and proper.


                                    s/ Daniel A. Edelman
                                    Daniel A. Edelman


Daniel A. Edelman
Illinois Bar Number: 00712094
Heather Kolbus
Illinois Bar Number: 6278239
Attorneys for Plaintiff
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## <u>NOTICE OF ASSIGNMENT</u>

Please be advised that all rights relating to attorney's fees have been assigned to counsel.


<u>s/ Daniel A. Edelman</u>
Daniel A. Edelman


Daniel A. Edelman
Illinois Bar Number: 00712094
Heather Kolbus
Illinois Bar Number: 6278239
Attorneys for Plaintiff
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

s/Daniel A. Edelman
Daniel A. Edelman